### The Jones & Adams Company v. Consolidated Coal Company of St. Louis.

CONTRACT—*strike clause excusing performance construed. Held,* that under a fair and reasonable construction of the contract in question in this case only such strikes excused performance as directly prevented such performance.

Assumpsit. Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the November term, 1906. Affirmed. Opinion filed June 1, 1907.

RUNNELLS & BURRY and HAMILTON & CATRON, for appellant.

LAWRENCE & FOLSOM, FORMAN & WHITNEL and PATTON & PATTON, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

The pleadings and issues involved in this cause are sufficiently stated in the opinion of this court upon a former appeal, reported in 120 Ill. App. 139.

Upon remandment of the cause another trial was had resulting in a judgment in favor of the plaintiff for $7,977.63, to reverse which the defendant prosecutes the present appeal.

A number of questions which were considered and determined upon such former appeal are again pre-

524    APPELLATE COURTS OF ILLINOIS.

VOL. 134.] Jones & Adams Co. v. Cons. Coal Co. of St. Louis.

sented and argued. We adhere to the views there expressed upon the questions as to whether under the contract between the parties the cars upon which the coal was to be delivered were to be furnished by the vendor or vendee, the competency of evidence tending to show a practical contemporaneous construction by the parties of the contract in that respect, and whether or not the contract was to any extent illegal and void under the statute relating to options.

Upon the last trial substantially the same correspondence offered and admitted upon the former trial was again introduced in evidence. Notwithstanding the able and elaborate arguments of counsel, we are still of opinion that such evidence was not only competent, but was sufficient to justify the jury in finding that appellant by its conduct construed the contract as imposing upon it the duty to furnish the cars in question.

It is contended that no substantial damages were shown by competent evidence. It is not controverted that during the period of time covered by the contract, appellee demanded, and appellant failed to deliver 30,610 tons of coal more than was delivered by appellant. The witness, Hill, called by appellee, testified that during the term covered by the contract, the market price of coal at and in the vicinity of Springfield, the place of delivery, varied from $1.75 per ton in October, 1902, to $3.50 and $3.75 in the following December and January, and that it then receded to $1.50 in February and $1 in March. No evidence to the contrary was adduced by appellant, but in support of the claim that these prices did not represent the true market value, evidence was introduced by appellant which tended to show that during the time in question an unlawful combination of coal operators and dealers, known as the Northern Illinois Soft Coal Association, and which controlled the output of coal in Northern Illinois, about one-fifth of the total product of the state, was engaged in regulating and raising the price of coal in

Chicago and vicinity. That during the same time a large quantity of coal was accumulated by speculators, in an attempt to "corner" the market, which coal was stored upon cars in the terminal railroad yards in and around Chicago. That this tended to cause not only an unusually high and erratic market at Chicago, but also created a scarcity of cars.

It is insisted by appellant that in view of the foregoing evidence, it necessarily follows that the prices shown by the evidence were temporarily inflated, and based upon an unlawful market, and were therefore not properly to be considered in estimating the damages. Appellee contends that inasmuch as the parties to the alleged unlawful combination referred to, neither sold or shipped coal to the Springfield market, it could not have affected the prices there, and Sweet, one of its witnesses, testified that the scarcity of coal in the west was the cause of the higher prices and that the action of the combination in question did not affect the prices, even at Chicago. The question was one for the determination of the jury and we cannot say that their finding that the market prices of coal at Springfield during the term of the contract were those fixed by Hill and others of appellee's witnesses, was so clearly contrary to the evidence as to warrant our disturbing the same.

The contract between the parties contained the following clause: "It being understood and agreed that said first party (appellant) will not be required to furnish coal under its agreement during any portion of the time when prevented by strikes, unavoidable accidents or other causes beyond its control from handling the product of the mine from which the coal herein provided for is produced." The evidence tends to show that, beginning in the summer of the year 1902, a strike occurred in the anthracite coal fields of Pennsylvania and elsewhere which lasted until about November of that year. That in consequence many cars ordinarily used in the west were caused to go east

526    APPELLATE COURTS OF ILLINOIS.

VOL. 134. ] Jones & Adams Co. v. Cons. Coal Co. of St. Louis.

loaded with coal for consumption in that territory, causing a scarcity of cars in Illinois from September until March. Appellant requested the court to instruct the jury that if they believed from the evidence that the defendant was prevented from delivering to the plaintiff any coal called for by the contract, by strikes, unavoidable accidents or other causes beyond the defendant's control, then it could not be held liable for a failure to deliver such coal; and further that such strikes might include not only those of the defendant's own employes but any other strike influencing the defendant's ability to furnish such coal. The court refused to so instruct the jury, but did instruct them that the so-called "anthracite strike" could not be considered by them as a strike within the exception in the contract which exempted defendant from furnishing coal when prevented by strikes. It is insisted that this was error. We are of opinion that the ruling of the court upon these instructions was proper. Under a fair and reasonable construction of the contract in this regard only such strikes were intended to excuse performance as directly prevented appellant from handling the product of its mines. While the shortage of cars may have, to some extent, been due to the "anthracite strike," such strike was, as shown by the evidence, at the most, but one of several contributing causes. It cannot be said to have been the primary or chief cause, as was contemplated by the contract. Moreover, with the limitation referred to, the jury were fully instructed that any strike, unavoidable accident or other cause that prevented the defendant from handling the product of its mines during any period of time, would operate to relieve it from performance of the contract during such time; and further that in the event of any inability to obtain cars arising from causes beyond the control of the defendant, the plaintiff could not recover on account of any coal which it was thus prevented from delivering. The issue of fact was thus

Jones & Adams Co. v. Cons. Coal Co. of St. Louis.

directly and fairly presented to the jury and they were properly instructed as to the law applicable to the facts as they found them. The evidence fails to show that at any time, for any reason, appellant was wholly prevented from handling the product of its mines. On the contrary it appears that it received, filled and shipped cars of coal almost daily during the entire period covered by the contract.

The evidence also shows that during the time appellant received many more cars than would have been sufficient to supply appellee with the coal called for by the contract. It is claimed by appellant, and there is evidence tending to show, that some of these cars were furnished by the railroads or other customers of appellant, with binding conditions as to their use, and were therefore not available for use in filling appellee's contract. It does not definitely appear, however, how many of the cars in question were, for the reasons stated, not available for general commercial purposes. The burden rested upon appellant, to show by the greater weight of the evidence, that it was prevented by the causes enumerated in the contract, from handling in whole or part, the product of its mine. It was difficult for the jury to determine from the evidence to what extent, if any, such causes existed. The question was peculiarly for their determination, and in this state of the proof we are not inclined to hold that the finding that appellant was not to any extent so prevented, was clearly and manifestly against the evidence.

The given instructions state the law applicable with substantial accuracy, and those refused were properly so.

The judgment of the Circuit Court is affirmed.

*Affirmed.*